UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAMELA C.,

                              Plaintiff,

                v.

FRANK BISIGNANO, *Commissioner of
Social Security*,

                              Defendant.

**MEMORANDUM & ORDER**
24-CV-02687 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Pamela C.[1] brings this action against the Commissioner of the Social Security

Administration (the "SSA"), Frank Bisignano (the "Commissioner").[2]  She seeks judicial review,

pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying her application for

Social Security disability benefits.  *See* ECF No. 1.[3]  Before the Court are the parties' cross-

motions for judgement on the pleadings.  *See* ECF No. 8 (Plaintiff's Motion); ECF No. 10

(Defendant's Motion); ECF No. 11 (Plaintiff's Reply).  Plaintiff seeks remand of this action to

---

[1]     Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and
Case Management of the Judicial Conference of the United States.  The Clerk of Court has
modified the docket to reflect Plaintiff's abbreviated name.

[2]     Although the docket lists Martin J. O'Malley as the Defendant, pursuant to Rule 25(d),
Commissioner Bisignano has been automatically substituted in this case.  *See, e.g.*, *Rebecca M.
v. Bisignano*, No. 24-cv-1108, 2025 WL 1583399, at *1 n.1 (N.D.N.Y. June 4, 2025).  The Clerk
of Court has modified the docket to reflect Defendant's name.

[3]     Citations to ECF cite to the pages assigned by the Electronic Case Files System.
Citations to the Administrative Record ("AR"), ECF No. 5-1 through 5-13, refer to the bold
bates-stamped number at the bottom right corner of each page of the AR.  Unless otherwise
indicated, when quoting cases, the parties' papers, and the AR, the Court omits all internal
quotation marks, alternation marks, emphases, footnotes, and citations.

the SSA, while Defendant asks the Court to affirm the Commissioner's denial of benefits.  For the reasons stated below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

### I.    Procedural History

Plaintiff first applied for disability benefits on June 3, 2021, alleging disability based on obstructive sleep apnea, Epstein Bar Syndrome, right ankle arthritis, anxiety, and depression since May 9, 2020.  *See* AR at 52–54, 70, 234–40.  Initially, the SSA did not approve Plaintiff's claim and Plaintiff requested reconsideration of her claim.  *Id.* at 90, 94.  Plaintiff's request for reconsideration was denied on February 14, 2022.  *Id.* at 68–86, 95–97.

Plaintiff then requested a hearing before an administrative law judge.  *Id.* at 99–100.  The requested hearing (the "Hearing") took place on October 6, 2022, before Administrative Law Judge Brian Crawley (the "ALJ").  *Id.* at 33–51.  Following the Hearing, on March 22, 2023, the ALJ found Plaintiff not disabled under sections 216(i) and 223(d) of the Social Security Act.  *Id.* at 14–27.  Plaintiff requested review of the ALJ's decision, however the Appeals Council found Plaintiff's request for review did "not provide a basis for changing the Administrative Law Judge's decision."  *Id.* at 1–4.

Following the decision of the Appeals Council, Plaintiff appealed the Commissioner's final decision to this Court pursuant to Section 405(g) of the Social Security Act on April 10, 2024.  ECF No. 1.

### II.    Medical History

Plaintiff appeals only the Commissioner's determination with respect to her mental health.  *See* ECF No. 8-1 at 5; ECF No. 11 at 2.  Accordingly, only that portion of her medical history is discussed below.

2

A.    *Mental Health Treatment Records*

Plaintiff has received primary care from Sun River Health ("Sun River") since at least

2020.  *See* ECF No. 5 at 772, 808, 812, 818   Throughout her regular appointments in 2020,

Plaintiff denied any psychiatric symptoms.  *See id.* at 772 808, 812.  Then, during an

appointment in January 2021, Plaintiff reported "significant anxiety" to her primary care

provider.  *Id.* at 470.  The next day, Plaintiff met with a licensed clinical social worker for a

psychotherapy assessment.  *Id.* at 466–68.  During that assessment, the provider noted that

Plaintiff suffered from "moderately severe depression" and "severe anxiety"  *Id.* at 467.  Plaintiff

reported that gastrointestinal issues and challenges related to medication for those issues,

coupled with her inability to lose weight, made her feel anxious and depressed.  *Id.* at 466.

After the initial assessment, Plaintiff met with the licensed clinical social worker for

regular follow-up appointments throughout the first half of 2021.  Over time, these appointments

revealed that Plaintiff displayed symptoms of moderate to moderately severe depression, severe

anxiety, and impaired insight, judgment, and impulse control.  *See, e.g.*, *id.* at 381–82, 384, 394.

However, during that same period, Plaintiff did not report any psychiatric symptoms during her

regular primary care appointments at Sun River, s*ee, e.g.*, *id.* at 365, 375, 403, 424, and

depression screenings conducted by Plaintiff's primary care providers indicated minimal

depression, with PHQ-9 scores ranging from zero to five (indicating no to mild depression), *see*

*id.* at 363, 373, 407, 435.

In May 2021, Plaintiff began taking medication for her depression and anxiety.  *See id.* at

369.  Plaintiff initially took paroxetine (Paxil) for depression and buspirone (Buspar) for anxiety.

*Id.* at 371.  Later that month, Plaintiff stopped taking Paxil but remained on Buspar.  *Id.* at 352.

She reported an immediate reduction in anxiety symptoms with no side effects while taking only

Buspar. *Id.* at 351–52.  At medication management sessions with Sun Health providers, Plaintiff

regularly reported that her medication was helping, and provider notes from these sessions

indicate that the results of Plaintiff's mental health status examinations were generally

unremarkable, except for the same impaired insight, judgment, and impulse control noted by the

licensed clinical social worker.  *See, e.g.*, *id.* at 351–52, 555, 577, 584.

Plaintiff continued to receive counseling, medication management support, and primary

care, through the latter half of 2021.  *See, e.g.*, 545–87.  During that time, Plaintiff continued to

report moderate to moderately severe depression and severe anxiety in sessions with the licensed

social worker*, see, e.g.*, *id.* at 346–47, 574–75, 566–67, and continued to indicate at medication

management appointments that medication helped her symptoms.  Plaintiff twice appeared at the

emergency department due to an anxiety attack.  *See id.* at 492, 519.  Yet at other appointments,

she continued to receive unremarkable scores (aside from the previously mentioned impaired

insight, judgment, and impulse control scores) and did not report psychiatric symptoms.  *See id.*

at 548–49, 557–59, 898–99.

Plaintiff continued medication management, as well as primary care, at Sun Health

during the latter half of 2021 through at least the first part of 2022.  *See, e.g.,* 587, 890–910.

During medication management appointments, she reported medication compliance with no side

effects, *see, e.g.*, *id.* at 545, 576, 583, 904, and mental status examinations showed some

variation in mood but were otherwise unremarkable, *see, e.g., id.* at 546, 555, 577, 584, 904–05.

Plaintiff began mental health treatment at Community Counseling Services ("CCS") in

February 2022.  *Id.* at 654, 657.  Providers there reported that, while Plaintiff had an irritable

mood, her mental status was otherwise unremarkable and further noted that Plaintiff's insight,

judgment, and impulse control were "Good."  *Id.* at 664.  They additionally described her

4

functional status as "Intact." *Id.* at 664.  In June 2022, Plaintiff met with Richardo Arango, M.D. ("Dr. Arango") at CCS for an intake appointment. *Id.* at 654.  There, she reported a history of social anxiety, feelings of depression, and difficulty breathing while feeling anxious. *Id.* at 654–55.  Dr. Arango continued Plaintiff's Buspar prescription and added Prozac. *Id.* at 655.  At a follow-up appointment in August, Plaintiff told Dr. Arango that her mental state and concentration were improving. *Id.* at 662–63.

B.    *Consultative Opinions and Administrative Medical Findings*

The ALJ further considered the medical opinion of a consultative medical examiner as well as initial and reconsidered administrative medical findings. *Id.* at 23–25.  In August 2021, Plaintiff was evaluated by Paul Herman, Ph.D. ("Dr. Herman") in connection with her initial application for disability benefits. *Id.* at 593–95.  During that evaluation, Plaintiff reported a "somewhat underdeveloped sense of dealing with life stressors and symptoms," such as "feel[ing] tense and anxious, and shaky at times," but that she was able to generally avoid situations in which she felt anxious and uncomfortable. *Id.* at 593–94.  She did not report significant difficulties due to psychiatric or psychological issues. *Id.* at 595.  Dr. Herman's observations of her mental functioning were unremarkable, finding Plaintiff exhibited fair insight and judgment and coherent, goal directed thought processes. *Id.* at 594–95.

On September 21, 2021, state agency psychiatric consultant V. Ng, Ph.D. ("Dr. Ng") found that Plaintiff's mental impairments were not severe. *Id.* at 60.  Dr. Ng found mild limitations in Plaintiff's ability to adapt and manage herself, and to concentrate, persist, or maintain pace, and no limitations in interacting with others or understanding, remembering, or applying information. *Id.* at 59.

On February 11, 2022, state agency psychiatric consultant T. Gilford, Ph.D.

("Dr. Gilford"), reviewed the record and concluded that Plaintiff's mental health impairments

were not severe.  *Id.* at 76, 78.  Dr. Gilford concurred with Dr. Ng that there were mild

limitations to some of Plaintiff's abilities, but no limitations to others.  *Id.* at 77.

C.    *Plaintiff's Testimony at the Hearing*

The ALJ also considered Plaintiff's testimony at the Hearing.  *Id.* at 21–22.  There,

Plaintiff testified that she could not work due to social anxiety, daily anxiety attacks, and

complications from her anxiety medication.  *Id.* at 37–40.  Plaintiff further testified to challenges

she experienced when carrying out basic functions, such as dressing, bathing, cooking, and

maintaining her household.  *Id.* at 41–43.  She reported spending most of her days lying down or

sitting and reading entertainment magazines, *id.* at 41–42, finding it difficult to get out of bed

due to depression, and crying for no reason, *id.* at 48.

## LEGAL STANDARD

When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, as

Plaintiff does here, the Court must "conduct a plenary review of the administrative record" and

determine "whether the ALJ applied the correct legal standards and whether the ALJ's

determination is supported by substantial evidence."  *Rucker v. Kijakazi*, 48 F.4th 86, 90–91

(2d Cir. 2022).  "The substantial evidence standard is a very deferential standard of review—

even more so than the clearly erroneous standard."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir.

2022).  But the standard is "not merely hortatory:  It requires relevant evidence which would lead

a reasonable mind to concur in the ALJ's factual determinations."  *Colgan v. Kijakazi*, 22 F.4th

353, 359 (2d Cir. 2022).  The Court is therefore "required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn."  *Schillo*,

6

31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original). Stated otherwise, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* Although an ALJ is not required to reconcile "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

In contrast to the very deferential standard of review applicable to evidentiary challenges, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 488 F Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). However, remand to the SSA is unnecessary "[w]here application of the correct legal principles to the record could lead only to the same conclusion" as the one reached by the ALJ. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

## DISCUSSION

On appeal, Plaintiff takes issue with the ALJ's assessment of her Residual Functional Capacity ("RFC"), claiming that said assessment was unsupported by substantial evidence. *See* ECF No. 8-1 at 10–14. In particular, Plaintiff alleges that he ALJ did not properly take into account Plaintiff's mental impairments in formulating the RFC, unduly credited certain evidence in the AR, and failed to explain his reasoning. *See id.* at 11–13; *see also* ECF No. 11 at 2–4. The Court begins with a brief discussion of how an ALJ forms their determination before addressing Plaintiff's challenge.

7

## I.     Determining the RFC and Disability

### A.     Determination of the RFC

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step one, the ALJ considers the claimant's work activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is performing substantial gainful activity, the claimant is not disabled. *Id.*  At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the twelve-month durational requirement. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled.  At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments matches one of those listings, then the ALJ will find the claimant disabled.  If not, the ALJ proceeds to step four.

When a claimant alleges mental impairments, the ALJ applies a special technique outlined in 20 C.F.R. §§ 404.1520a and 416.920.  Specifically, the ALJ first evaluates the "paragraph B criteria" under 20 C.F.R. Part 404, Subpart P, Appendix I, which correspond to "four broad functional areas" used "to determine the degree, if any, of [a] claimant's mental impairment." *Zacharopoulos v. Saul*, 516 F Supp. 3d 211, 231 (E.D.N.Y. 2021).  Those areas are:  "(1) understanding remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself." *Id.*

8

(citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)).  To satisfy the paragraph B criteria, the mental impairments must result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning.  20 C.F.R. Part 404, Subpart P, App. 1, § 12.00 A(2)(b).  An extreme limitation is an inability to function in the area independently, appropriately, effectively, and on a sustained basis.  *Id.* § 12.00 F(2)(e).  A marked limitation is a seriously limited ability to function in the area independently, appropriately, effectively, and on a sustained basis.  *Id.* § 12.00 F(2)(d).  If the paragraph B criteria are satisfied, the impairment is presumptively disabling at step three.  Even if the paragraph B criteria are not satisfied, an impairment may still be presumptively disabling if the "paragraph C criteria" are met.[4]  *See id.* § 12.00 G(1).

At step four, the ALJ evaluates the claimant's past relevant work and RFC, defined as "the most [the claimant] can still do despite [her] limitations."  *Id.*  § 404.1545(a)(1); *see id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Past work is relevant to this analysis if:  (1) the claimant performed the work within the past five years;[5] (2) the work qualifies as substantial

---

[4]    To satisfy the paragraph C criteria, the claimant's mental disorder must be "serious and persistent"; that is, there must be a medically documented history of the existence of the disorder over a period of at least two years, and evidence that satisfies the criteria in both C1 and C2. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00 G(2)(a).  The criterion in C1 is satisfied when the evidence shows that the claimant relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of his or her mental disorder.  *Id.* § 12.00 G(2)(b).  The criterion in C2 is satisfied when the evidence shows that, despite this treatment, the claimant has achieved only marginal adjustment.  *Id.* § 12.00 G(2)(c).  "Marginal adjustment" means that the claimant has minimal capacity to adapt to changes in environment or to demands that are not already part of their daily life; for example, the claimant may be unable to function outside of his or her home without substantial psychosocial supports, or may experience repeated episodes of deterioration which would make it difficult to sustain work activity over time.  *Id.*

[5]    At the time of the ALJ's decision, Section 404.1560(b)(1) provided for a 15-year lookback.  Although not directly relevant in this appeal, the subsequent amendment to five years does not function retroactively, so the Court applies the same version of the rule that the ALJ

gainful activity; and (3) the work lasted long enough for the claimant to learn how to do it. *Id.* §§ 404.1560(b)(1)(i), 416.960(b)(1)(i). If a claimant's RFC permits her to perform past relevant work, she is not disabled. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of claimant's RFC, age, education, and work experience, she can perform other substantial gainful employment. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "The claimant bears the burden of proof in the first four steps . . . ." *Schillo*, 31 F.4th at 70. "In step five, the burden shifts, to a limited extent, to the Commissioner," but the Commissioner "need not provide additional evidence of the claimant's [RFC]" at that stage. *Id.*

### B.    *Weighing Medical Opinion Evidence*

For benefits claims filed before March 27, 2017, the so-called Treating Physician Rule ("TPR") applied, under which the medical opinion of a treating source was entitled to "controlling weight" if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. *Colgan*, 22 F.4th at 359. On January 18, 2017, the SSA published comprehensive revisions to the regulations concerning the evaluation of medical evidence. Those revisions became effective on March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate all medical opinions for persuasiveness

---

did. *See Paulette M. v. Comm'r of the Soc. Sec. Admin*, No. 23-cv-04668, 2025 WL 383656, at *6 n.5 (E.D.N.Y. Feb. 4, 2025).

under 20 C.F.R. § 404.1520c, focusing primarily on supportability and consistency.  *Rucker*, 48 F.4th at 93.

## II.     Application to the Instant Case

Here, the ALJ proceeded through all five steps of the evaluation process.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since May 9, 2020.  AR at 19. At step two, the ALJ found Plaintiff had the severe impairments of anxiety, depression, right-ankle degenerative joint disease, and obesity.  *Id.* at 19.  At step three, the ALJ found that the Plaintiff's medical limitation did not "meet or medically equal the criteria of listings for [depression and anxiety]."  *Id.* at 20.  The ALJ thus looked to the paragraph B criteria to determine whether Plaintiff's mental limitations were severe.  *Id.*  Specifically, the ALJ applied the paragraph B criteria discussed above and found moderate limitations in Plaintiff's "understanding, remembering or applying information"; in her "interacting with others"; and in her "concentrating, persisting or maintaining pace" as well as a mild limitation in "adapting or managing [herself]."  *Id.*  Based on these findings, the ALJ further determined that Plaintiff's limitations did not meet the paragraph C criteria.  *Id.*

Because the ALJ determined that Plaintiff did not have an impairment that comported with the list in 20 C.F.R. Part 404, Subpart P, Appendix 1, he went on to step four and assessed Plaintiff's RFC.  *Id.* at 21.  The ALJ determined that Plaintiff was able to perform light work with some additional limitations.  *Id.*  With respect to Plaintiff's mental impairments, the ALJ found:

> in addition to normal breaks, for approximately 54 minutes of each hour or 90% of the workday, equating to 10% off task, the individual can perform simple, routine, repetitive tasks, occasionally can make work-related judgements and decisions, occasionally deal with changes in a routine work setting, can perform positions that

require interaction with supervisors and coworkers occasionally and can have no interaction with the public.

*Id.* In reaching this determination, the ALJ gave primary weight to the treatment records of Plaintiff's treating physicians at Sun River, which included documentation of Plaintiff's self-reported mental state as well as the results of mental status examinations. *Id.* at 22. The ALJ also credited Plaintiff's testimony at the hearing as to the particular symptoms, but found her statements regarding their "intensity, persistence, and limiting effects" inconsistent with the rest of the evidence. *Id.* In particular, the ALJ pointed to the discrepancy between Plaintiff's testimony at the hearing and her ongoing, stable mental status examinations throughout 2021. *Id.* Finally, the ALJ did not find the statements of physicians at CCS to be persuasive as they were conclusory in nature and not consistent with the mental health findings at Sun River. *See id.* at 23.

With respect to the consultative medical opinions and prior administrative medical findings, the ALJ refused to defer or accord any special weight to these sources. *See id.* Nevertheless, the ALJ found the opinion of psychiatric consultative examiner Dr. Herman generally persuasive with respect to his finding that "[Plaintiff's] mental impairments are not significant enough to interfere with [her] ability to function on a daily basis" as it was consistent with the results of Plaintiff's ongoing mental status examinations. The ALJ noted that, although Dr. Herman did not specify the precise degree of any limitations in his assessment aside from a mild limitation in Plaintiff's ability to regulate her mood, any degree of limitation reasonably suggested by Dr. Herman's opinion (*i.e.*, consistent with the rest of the medical source evidence), was already accounted for in the RFC. *See id.* The ALJ treated similarly the findings of state agency medical analysts Dr. Ng and Dr. Gilford, who both "assessed that the claimant had no

more than mild psychiatric limitations," *id.* at 24, though he discounted their probative value given they were undertaken before all medical record evidence was available, *id.* at 25. The ALJ accordingly ascribed "*greater* limitations" than their opinions would otherwise warrant "on the basis of claimant's testimony" and other medical source evidence. *Id.* (emphasis added).

Relying on the response of vocational expert Frank Linder to vocational interrogatories, the ALJ determined that an individual with Plaintiff's functional restrictions could not perform her past work, but could perform other occupations in the national economy present in significant numbers. *See id.* at 25–26. Accordingly, Plaintiff's claim failed at step five, and the ALJ found she was not disabled. *Id.* at 26.

### III.    Plaintiff's Challenge to the RFC

On appeal, Plaintiff challenges the sufficiency of the record in supporting the ALJ's mental health findings. Specifically, Plaintiff argues that: (1) the ALJ failed to develop the record regarding Plaintiff's mental impairments, and (2) that the ALJ's RFC determination is not supported by substantial evidence. *See* ECF No. 8-1 at 10–14. For the reasons discussed below, the Court disagrees.

Plaintiff's arguments suggest a misapprehension that Dr. Herman's opinion is the only medical source evidence regarding Plaintiff's mental health to which the ALJ could correctly ascribe any weight, and that certain deficiencies in Dr. Herman's opinion required that the ALJ further develop the record. *See* ECF No. 8-1 at 10–13. However, contrary to Plaintiff's position, the ALJ had no obligation to further develop the record, and it was well within the ALJ's discretion to credit Dr. Herman's opinion in light of the entire record before him.

13

A.     *The Weight of Dr. Herman's Opinion*

Plaintiff first asserts that "the only examining medical source statement regarding Plaintiff's mental impairments is from Dr. Herman." ECF No. 8-1 at 12. That is flatly contradicted by the record. As outlined above, Plaintiff's mental health record was not solely comprised of the opinion of consultative examiner Dr. Herman. In fact, Plaintiff's mental health record also comprised—and the ALJ also considered—the prior administrative medical findings of Dr. Ng and Dr. Gilford, the clinical findings of Plaintiff's various mental health and primary care providers, and Plaintiff's own account of her mental impairments as relayed by her during the Hearing. *See* AR at 20–25.

It was well within the ALJ's discretion to credit Dr. Herman's opinion as he did, especially in light of the other evidence of record. *See* 20 C.F.R. § 404.1520c (the ALJ is not obligated to "defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"). Here, the ALJ explained why the evidence from each medical source was given its corresponding weight in the context of the entire record. AR at 22–25. In particular, the ALJ explained that he found Dr. Herman's opinion generally persuasive given the sufficiency of the medical evidence Dr. Herman considered and its consistency with the mental status examinations Plaintiff had received from her primary care providers. *Id.* at 24. But, as the ALJ explained, Dr. Herman's opinion and Plaintiff's own subjective experience as reported at the Hearing were inconsistent with the other sources of mental health evidence. *Id.* at 22–24. In particular, the administrative medical findings of Dr. Ng and Dr. Gilford found Plaintiff to have no more than mild limitations in her ability to manage herself, and her ability to concentrate, persist or maintain pace. *Id.* at 59, 77. Further, the ALJ credited the continuous mental health findings of Plaintiff's providers, which

14

found Plaintiff's claimed symptoms generally unremarkable. *See, e.g.*, *id.* at 351–52, 654, 904–05. He also found that the evidence tended to show Plaintiff could adequately control her mental health symptoms with medication. *See id.* at 351–52, 361, 662–63, 904.

Thus, in light of the other evidence in the record, and the ALJ's proper application of Section 404.1502c to the evidence, the Court cannot conclude that the ALJ committed reversible error by failing to credit Dr. Herman's opinion as Plaintiff would have preferred. *See Peets v. Jijakazi*, No. 21-cv-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022) ("That an ALJ does not give controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions.").

Plaintiff next argues that, even assuming the ALJ found Dr. Herman's testimony to be generally persuasive, the ALJ nevertheless failed to incorporate Dr. Herman's findings into his RFC. See ECF No. 8-1 at 12. The Court is not persuaded. In fact, contrary to Plaintiff's assertion, the ALJ's RFC does not appear to be inconsistent with Dr. Herman's opinion. As the ALJ noted, Dr. Herman opined that:

> there appears to be evidence of limitation with respect to [Plaintiff's] ability to understand, remember, and apply simple directions and instructions; use reason and judgment to make simple work-related decisions; sustain concentration at a consistent pace; ordinary routine; regular attendance; maintain well-being, personal hygiene and appropriate attire; and be aware of hazards and take appropriate precautions, and interact adequately.

AR at 595. As discussed above, despite the inconsistency of this opinion with other sources of medical evidence, the ALJ nevertheless accounted for the limitations Dr. Herman identified by adjusting his RCF to accommodate Plaintiff's anxiety and depressive symptoms. *Id.* at 24.

Therefore, to the extent that Dr. Herman's report can be fairly read as requiring limitations, the ALJ's RFC incorporates any such limitations.[6]

        B.      *The ALJ's Obligation to Develop the Record*

Plaintiff then argues that, despite the allegedly controlling nature of Dr. Herman's opinion, given the lack of any specified degree of "limitation" therein, the ALJ had an obligation to further develop the record, specifically to determine precisely what level of "limitation" Dr. Herman intended. *See* ECF No. 8-1 at 12–14. This argument is similarly without merit.

As a preliminary matter, all the sources Plaintiff cites in support of this assertion rely on the TPR in reaching their result, *see* ECF No. 8-1, at 13–14, which is no longer the law following the promulgation of 20 C.F.R. § 404.1520c, *see* Part I.B, *supra*. And even if the TPR still applied, Plaintiff's assertion that Dr. Herman's opinion would be controlling is still inapt given that under the TPR, a consultative physician's opinion was generally entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009). Further, this is not an instance where the ALJ was "substitut[ing] his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Rather, the ALJ relied

---

[6]    The Commissioner raises the colorable argument that Dr. Harmen's failure to specify the precise degree of "limitation" is a typographical error, and that Dr. Harmen had actually found *no* relevant limitation on Plaintiff's vocational functionality aside from a "[m]ild limitation regulating her mood." *See* EFC No. 10-1 at 19–20; AR at 595. The Court agrees with the Commissioner that remand on this basis would serve no useful purpose. If the Commissioner is correct, Plaintiff's position would be even further undermined because then there would be no medical source evidence supporting a finding of additional mental limitations that the ALJ did not consider. Regardless, and as discussed above, the ALJ accounted for any degree of limitation Dr. Herman could have meant in a manner consistent with the rest of the record. *See Schillo*, 31 F.4th at 76.

on the medical source evidence and the medical opinions before him in reaching his conclusion. *See id.* at 22–25.

In any event, the Court agrees with the Commissioner that "remand for clarification would service no useful purpose here." ECF No. 10-1 at 19. While it is indeed the case that "a hearing on disability benefits is a non-adversarial proceeding" such that the "ALJ generally has an affirmative duty to develop the administrative record, including when there are deficiencies in the record," *Schillo*, 31 F.4th at 76, a mere deficiency in a physician's reasoning does not rise to the level of an evidentiary gap, *see Glessing v. Comm'r of Soc. Sec.*, No. 21-1192, 2022 WL 457243, at *2 (2d. Cir. Feb. 14, 2022) ("[W]here the medical record appears to be complete and the evidence is sufficient to make a disability determination, the ALJ has no obligation to obtain more information.").

As discussed above, the ALJ treated Dr. Herman's assessment in a manner that was fully consistent with the rest of the record. Thus, Plaintiff has failed to even identify a gap in the record, let alone suggest that remand is warranted on this basis.

C.    *The Distinction Between Interactions with the Public and with Co-Workers and Supervisors*

Finally, in her reply brief, Plaintiff argues for the first time that remand is required because the ALJ impermissibly distinguished between interactions with the public and with supervisors and co-workers in the RFC without articulating a specific basis for the distinction. *See* ECF No. 11 at 3.[7] However, unlike the cases cited by Plaintiff in her reply brief, here, the

_____

[7]    The Court need not address this argument; courts have long held that arguments raised for the first time in reply papers may be disregarded. *See, e.g.*, *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387, n.82 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 843 (2d Cir. 1999) (collecting cases holding that an issue "first raised in reply papers in support of a motion"

ALJ clearly indicated a basis for such a distinction in his determination. The ALJ noted that Plaintiff alleged an "inability to deal with the public" distinct from other people whom she knows. AR at 25. Thus, to the extent the ALJ found limiting interactions with others generally appropriate, he articulated a clear basis for singling out the public, as opposed to co-workers and supervisors.

Thus, in light of the record, the Court finds that the ALJ's determination is amply supported by substantial evidence. *See Zacharopulos*, 516 F Supp. 3d at 220 (explaining that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether substantial evidence supports *the ALJ's decision*") (emphasis in original). Accordingly, the Court affirms the Commissioner's denial.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court GRANTS the Commissioner's motion for judgment on the pleadings and DENIES Plaintiff's motion for judgment on the pleadings. The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
      October 14, 2025

---

need not be considered). Nonetheless, to remove any doubt, the Court addresses the argument here.

18